The next case this morning is 521-0397, People v. Noland. Arguing for the defendant is Julie Thompson. Arguing for the state is Louise Gizzo. Each side will have 10 minutes for their argument. The appellant will also have 5 minutes for rebuttal. Please note only the clerk is permitted to record these proceedings. Good morning. Good morning. Good morning. Ms. Thomas, if you are ready to go, or Thompson, I'm sorry, if you're ready to proceed, you may begin. Thank you. May it please the court and counsel. My name is Julie Thompson. I represent Kadeem Noland today. I work for the Office of the State Appellate Defender. Mr. Noland is here today appealing the conviction for first degree murder. Kadeem Noland was arrested and charged with a co-defendant, Christine Mills. They were both charged with first degree murder. Prior to trial, Ms. Mills made a negotiated plea with the state, and in return for her guilty plea to obstructing justice, received a sentence of only six years in the Department of Corrections, in return for her testimony at trial against Mr. Noland. Prior to trial, the court made some significant pretrial rulings, and the defense complains about the ruling the court made allowing the state to introduce evidence of the defendant's eight prior convictions when he testified. During the pretrial rulings, the court informed the defense counsel, defense objected to the admission of these convictions, obviously, but counsel, or the court informed counsel that if Mr. Noland fronted those convictions, in other words, if during his then the state would be prohibited from introducing evidence of those convictions during its case and rebuttal. The court also advised that if Mr. Noland did not testify about his convictions, then the state would be allowed to introduce those convictions as part of its rebuttal case, and the court would read those convictions to the jury. Case proceeded to trial, Mr. Noland testified. He pled self-defense. His testimony was necessary. He testified about his prior convictions, and during that testimony, he said that the convictions occurred on the same date. When he was asked the seventh time if he had a conviction for theft or stealing, his response was they're all one in the same. The burglaries are on the same date and time. He ran into a building once and was convicted of multiple offenses. The state objected. That objection was sustained. As a result of that comment, the court decided that Mr. Noland had violated the pretrial ruling, allowed the state to present the convictions as rebuttal testimony, and subsequently read that testimony to the jury, or read the convictions to the jury. The last thing the jury heard was the defense then rested, and then the jury again heard from the court reading a list of those convictions. The jury heard closing arguments, went to deliberate, and found Mr. Noland guilty. When People v. Montgomery, the case, the seminal case on the admission of prior convictions, the court noted that a defendant's a dead duck when the jury hears that he has prior convictions, because if the evidence is close, they will convict based on the prior convictions, not based on the evidence that they've heard. And we argue that that is, in fact, exactly what happened here. In People v. Pitts, the court held that a defendant's testimony about his prior convictions when it was testimony that he had two or three priors was enough testimony about those prior convictions, and actually reversed the case when the trial court allowed the state to present those convictions as rebuttal evidence. They said no. He testified about it, and the testimony he gave was sufficient. That is supported, again, in People v. Johnson, wherein the court held that cross-examining a defendant about his prior convictions is permitted when the defendant has testified about those prior convictions. And in this particular instance, the court's justification or rationale for giving the rebuttal test, allowing the state to give the rebuttal presentation, was that Mr. Noland had left out the location of the convictions. Where the Mr. Noland did, in fact, leave out the location of the convictions. Location of the convictions is not relevant to anything and could have been resolved easily by the state cross-examining Mr. Noland to discover the location of those convictions. People v. Johnson allows exactly that. Cross-examination is the appropriate method here for dealing with this problem, not the presentation of the evidence a second time from the court. Science tells us we remember what we hear last. There's a rule, recency, and the scientists have referred to it as the rule of recency. We remember what we heard most recent, or the last thing that we heard. That's what this jury heard. They heard testimony from Mr. Noland about his prior convictions. Then they heard the court read those same prior convictions. Then they heard closings, and then they deliberated. All that doesn't suggest though that you remember the last thing you heard at the exclusion of everything you heard before though, right? Of course not. You don't remember it to the exclusion, but it's also the first thing on one's mind when that issue comes up. When that jury sat down to deliberate, the likelihood is the first thing that came up was that list of convictions that the judge just read after they testimony. It puts an importance on it that is not justified. It puts a significance on it that is not warranted. When it comes from the trial court reading that list of convictions, the jury looks to the court as the fair person in the room. That is who they respect. That is who they pay attention to. That is who they listen to. When the court reads those list of convictions, again, I flash back to the Montgomery decision. The defendant's a dead duck when the jury hears that he's got these priors. The court put an undue emphasis on them when the court allowed the state to use them as rebuttal, and the court then emphasized them when the court read them to the jury. This issue was not preserved. Counsel did not preserve this issue, and for that reason, we are arguing and bringing it to the court's attention under a theory of plain error, and it would be first-pronged plain error. We believe the error here is clear. Under Pitts and Johnson, the error that the court made in allowing the state to present this rebuttal evidence is clear. The question then becomes whether or not the evidence here is closely balanced. We believe that it is. The evidence that the jury had was that both Mr. Noland and the state presented through its pathologist, Dr. Norfleet, was that there were two separate trajectories in the bullet wounds that the defendant received. Mr. Noland testified he was standing at the top of a staircase. When he saw a gun in his shoulder come around the stairs, he fired his weapon. The victim fell to the staircase landing. He continued to fire his weapon. The trajectories of the bullet wounds, the first shot was an upward trajectory that went into the neck of the victim. The pathologist testified that the remaining shots and the fatal shots were fired subsequently while the victim was laying prone on the landing. The testimony from Ms. Mills corroborates the testimony of Mr. Noland as to what happened. According to Ms. Mills, she was upstairs in the home when the shooting occurred. She heard absolutely nothing before the first shot was fired. It is our position that the testimony of Ms. Mills corroborates that of Mr. Noland, at least as to his argument of self-defense, and that what tipped the scales here was the knowledge of those convictions that the jury had coming from the court itself. For those reasons, we ask that the court consider overruling and vacating the conviction and remanding this matter for a new trial. Thank you. Ms. Thompson, did the trial court admonish the jury on what they could use those convictions for? The jury did receive a limiting instruction on what those convictions could be considered for, yes. And that was after the recitation of the certified by the court, right? All of it was specifically after. I know that it was part of the court's instructions. I don't remember if the court gave a specific instruction at the time. Let me look quickly and see if I can answer that. I don't believe so, Your Honor, but my notes are not clear. I know that they received an instruction with all of the instructions. I don't know if the trial court specifically gave a limiting instruction at the time that she read the convictions into record. Thank you very much. Justice McKinney, Justice Welch, any questions? Justice McKinney has a question. Yes. Wasn't the trial court clear that the defendant would be allowed to confront or to front the convictions, but he couldn't try to qualify? And didn't, in fact, he try to do that and diminish in this case? What the court told him, if you choose to front those, you may, but fronting them doesn't mean he gets to explain each of the offenses or explain that he pled guilty to what he's guilty to. The response that Mr. Nolan gave, he was questioned, and then you had a theft or stealing case. His answer was, correct. These are all one in the same. They are on the same date and time, ran into them once, one building, multiple offenses. The state objected. The objection was sustained. That occurred on record page 794. Our argument with that is he was attempting to answer the date on which all of these offenses occurred. This came at the end of a list of questions, and then you had another theft or stealing, and then you had another theft or stealing, and then you had another theft or stealing. And at the end of eight recitations of that, his response was, they all occurred on the same date. The people versus Johnson tells us that the remedy for this, if the court, in fact, believed that this was an inappropriate response, the remedy is to allow the state to cross-examine him as to that response. The remedy is not for the state or for the court then to admit the evidence as rebuttal evidence and then read it the jury. Thank you. Ms. Thompson, with regard to the plain error that you're alleging, it requires that the court find that there was error and that it tipped the balance of everything. The case was not so close that that error alone could have changed the outcome. Is and that the error tipped the scales against the defendant. You say it so much better than I do. Thank you. With regard to that, though, isn't there an overwhelming amount of evidence against your client that would suggest he would have been found guilty without that recitation of his prior history? I don't know that there is. There's a significant amount of evidence. Obviously, he was in the house. He was in the house with his co-defendant, who was the owner of the house. Ms. Mills actually owned that property. Right. And the shooting occurred. He pled self-defense. The pathologist. He had at least three different versions of what took place that evening. So he did have. It was an issue, right? His credibility is an issue, Your Honor, as is credibility of Ms. Mills. And and I think the only other civilian witness that was present was the victim's brother who testified. And he had some credibility issues as well. Right. I don't think anyone was totally credible in this case. But but as far as the other evidence, the evidence, the police found him in the hotel with the guns that were matched to the bullets, you know, and. Seems like it's not so closely balanced. I think that it's the when you look at the trial testimony that that Mr. Nolan gave that he was at the top of the staircase when he saw a gun and a shoulder point around that staircase. And that is what caused him to fire his weapon the first time he subsequently continued to fire it. That is confirmed by the state's pathologist. That information, that testimony is is corroborated by the state's Yes, I agree with you that there was forensic evidence that suggests that the first bullet was to the neck, so forth and so on. But didn't didn't your client also testify at one point? And I'm not sure off the top of my head. I'm not sure the timing of this testimony that in fact, he never saw the gun pointed at him. He never saw the gun at any point that would have caused him to be in harm's way. I think and I think both of those things can be true. Judge, I think he saw the tip of the gun and did not see the actual gun is what he was trying to say. My client is not and it's obvious from the record that he's not an incredibly articulate individual. But his trial testimony was that what he saw was the tip of a gun and a shoulder on the staircase in a house where he thought he was alone with Miss Mills. And no one had said anything. And he heard nothing prior to firing his weapon. That evidence is corroborated by the state's pathologist. And that's the only physical evidence that I mean, that's the evidence about how Mr. Thomas ultimately met his demise. And that is corroborative of Mr. Nolan story. And I think that alone puts this in the position of being a closely balanced case. And then when the jury hears on top of that about his prior convictions, that's what tips the scales. Okay. All right. Well, thank you very much. I'll ask again, just McCain just as well. Do you have any questions? Further questions? Nothing further. Okay. Thank you, Mr. Thompson. You have time and rebuttal. Mr. Hizzo. Yes, Your Honor. All right. Did I get that? Right? Yes, Your Honor. Jack told me ahead of time, how does pronounce your name? And then it's been so long. I forgot already. So I just want to make sure. No, thank you. All right. Well, whenever you're prepared, you may begin. Your Honors Council may please the court. My name is Louis Hizzo. And I present I should affirm the lower courts holding and the defendant's conviction for two reasons. First, the trial court did not commit error when it allowed the state to reintroduce evidence of the defendant's criminal history during the state's rebuttal. And second, if there was error, there is an overwhelming amount of evidence against the defendant, that that error alone did not tip the scales of justice. As was noted, previously, the defendant did not object nor raise the issue of the reintroduction of his criminal history during the state's rebuttal on a post trial motion. Therefore, he forfeits general review. This honorable court should therefore examine the record for plain air. And the defendant here is seeking plain air under the first prong plain air rule. Under that analysis, the defendant has to show clear and obvious error, which he cannot, and that the evidence is so closely balanced that error alone threatened to tip the scales of justice regardless of the seriousness of the error. Now, generally, it is improper to cross examine a defendant concerning his prior convictions. And the state can only impeach that credibility of a defendant who testifies with evidence of his convictions through authenticated copies. It is a state's position that when the lower court committed, excuse me, it is a state's reintroduce those certified copies during its rebuttal can be answered through people versus Johnson, which is an appellate court case from 1990. I want to preface that by saying that the defendant was directed by the trial court on what he could and could not say whenever he would testify about his prior convictions if he chose to do so. And that was explained on the record on 733 through 734. Nevertheless, when the defendant was asked about a specific set of theft and robberies during his directed testimony, the defendant stated in quote, these are all one of the same, though those burglaries are on the same date and time. They just ran into them. I just ran into them once, just one building. They were just multiple offices. And that what is, again, found on the record on 794. Now, that's important because people versus Johnson is instructive on what the state can do whenever something like that happens. It's not that the defendant here is testifying falsely is what the defendant is trying to do here is sort of minimize and give some fact about his convictions so it leaves the wrong impressions on the jury. Now in Johnson, the defendant contended that a trial court improperly permitted a prosecutor to cross-examine him as to his prior convictions. And similarly to this case presented before us, the defendant decided to front his convictions during his direct examination. He attempted to cross-examine him. On appeal, the defendant argued that the state can only cross-examine him if he had testified falsely. And then again, the fourth district disagreed and instructed that when a defendant's statement, at least arguably, is intended to minimize the gravity of his prior offenses, the state should be afforded an opportunity to dispel those impressions made by the defendant. The court then further points out that the best practice would have been to copies of criminal dispositions. However, the court then uses the term useless formality because the defendant had already fronted them anyways. And our argument is, your honor, that there was no error, your honors, that there was no errors that occurred here. At worst, the state was allowed to proceed on a quote useless formality because the defendant had fronted his convictions, albeit he tried to misplace the gravity of them. And so, as the court in Johnson indicates here, that the best position or the best practice here would have been to allow the state to go ahead, introduce them as certified copies during its rebuttal, and proceed that way. Now, the defendant is citing to People v. Pitts. However, People v. Pitts is distinguishable from this case. First of all, it was a different standard that was used as that appellate court did not analyze the issue under a plain error analysis. Because in that case, the defendant objected during trial to the admissibility of those certified copies of his criminal record. And more importantly, as the dissent points out in that did not reverse and remand the case on the issue of the criminal history being introduced. And they didn't find that error to be reversible error. Instead, as the dissent points out, the only grounds for reversal in that case was ineffective assistance of counsel. The court then further found that the admission was error, because the court in that case found no need for further impeachment. And the court did not find the evidence to be so overwhelming that it even considered an argument for harmless error. And in the present case, the defendant is seeking review under plain error analysis and is not afforded the NOVA review. Furthermore, in Pitts, it is also distinguishable from the fact that the court in Pitts found no need for further impeachment, whereas in this case, it's similar to Johnson in that the defendant attempts to minimize the gravity of his convictions. And therefore, the state should be afforded an opportunity to However, even if this honorable court deems that there was error on this, the defendant cannot satisfy second prong of plain error analysis, and that the evidence is not so closely balanced. What constitutes error to be prejudicial is the fact that the error has to occur in a close case where the impact of the result could be potentially dispositive. Here, the defendant cannot satisfy that prong. As was previously stated in our brief, the defendant showed three different accounts of what occurred the night of the murder. First, the defendant provided investigating officers with a false statement at the night of when he was taken in custody, denying that he was ever in Granite City on the night of the occurrence. Then, he provided the state's attorney's office with the letter where he does admit to being present in Granite City but denied bringing a weapon with him into the residence. He indicated that he found the weapon there and only shot the victim after he became startled. And finally, at trial, we get the third version of what occurred that night, in which he testified that he acted in self-defense. He brought a 40-cal with him to the home and shot the victim after seeing the victim holding a weapon. And the jury had an opportunity to assess both his credibility as well as all three stories that he told. While being cross-examined, the defendant does admit that the victim never directly pointed a gun at him. The state also introduced evidence of a recorded conversation wherein the defendant attempted to sway his co-defendant from telling the truth of what happened. Notably, in this conversation, co-defendant Mills asked the defendant what to say about the shooting, to which the defendant replied, and I quote, when I go, I swear to God, I'm not going to sit for this long knowing I could have killed your ass because I feel like I like you. You're going to crack. And quote, I know how to beat a lot of shit. You hear me? I know how to beat a lot of shit, whether or not you snitch. And that can be found on the record on page 819 through 820. Then we have the physical evidence. Record exhibit 97 is a picture that shows defects on the tiled floor where the victim was laying when officers responded to the scene and moved the body. There were defects that were caused by impacts of rounds where the bullets were coming to arrest. That coupled with Dr. Norfleet's testimony indicating that there were certain rounds that went through the victim's torso area, middle portion of the body, albeit there was one round that went through the neck that traveled a different trajectory, but for the most part, he testified that six of his wounds around the middle portion of his body all traveled around the same direction and he further testified that the wounds found on some of the backside of the victim were simply abrasion and not true exit or entry wounds, indicating that the body was laying flat on a surface while the bullets were traveling and coming to a stop. Again, Dr. Norfleet concluded that the victim was shot in certain regions of the body and that the um testimony coupled with uh what occurred after the defendant was arrested um again leads uh is why we are asking this court to find that the defendant could not meet the second prong of plain air and your honors I see that my time is up and I thank you for your time. Uh thank you very much um Miss Thompson you have time in rebuttal. Uh you're on mute. There you go. I apologize I don't know how that happened. Um I would like to take up um the state's argument I think first with regard to people versus Pitts. The Pitts decision is the the decision wherein the court held that the um evidence of his prior convictions and that the admission of rebuttal testimony by the state was not necessary in that case. There was a um counsel is is correct that is not the reason that the state um reversed that conviction the state or the court reversed that conviction because of ineffective assistance of trial counsel. However, the state failed to note that Justice Stigman writing in a dissent said that I view the mishandling of the impeachment evidence so seriously that on this ground alone I might be inclined to reverse and remand for a new trial. Trial court reversed and remanded for ineffective or the appellate court reversed and remanded for ineffective assistance of counsel but the significance of the uh error committed by the trial court with regard to the admission of the prior convictions was noted as error in the Pitts case by the appellate court and that flows through um Johnson where the court takes the position that the appropriate remedy when the defendant fronts the convictions and is not truthful or makes an attempt to minimize them in some way is cross-examination not the introduction of additional evidence regarding those convictions. We believe the evidence here is closely balanced. Yes, Mr. Nolan gave three different stories as to what happened and his first story was shortly after his arrest. The letter that he wrote to the state um occurred during his incarceration prior to trial. I would note two things. One, both of these defendants were under significant influence of drugs and alcohol at the time this event occurred and Mr. Noland was under the influence at the time he made his first statement to the police. I don't think there's any question of that. There was testimony that they were using marijuana, fentanyl, methamphetamine, um and alcohol that day. Possibly additionals, I don't recall. So he was under the influence when he made certain statements. Notably, the only testimony or the only statement that he made that was under oath was his statement at trial. He swore to tell the truth. That is the testimony that he gave regard to his self-defense claim that is corroborated by Dr. Norfleet's testimony, the state's witness, the state's pathologist who tells us that one shot went into the neck. The first shot and the subsequent shots were while the defendant or while the victim was laying prone on the ground. We don't dispute that. That is what the evidence shows. However, self-defense does not mean you only get to shoot your gun once. Self-defense means you get to defend yourself. When a person is under threat and another person is pointing a gun at them, it is not uncommon for more than one shot to be fired. That's what happened here. We believe the evidence was closely balanced and we believe that the trials were aired and for that reason we ask this court to reverse the conviction and remand this matter for a new trial. Thank you. Thank you very much, Justice McKinney. Justice Welch, any questions? Yeah, if the victim was lying on the floor, was he shooting at that time? So that would have been the last thing he knew, I guess, about what happened. Yes. Was he shooting while he was flat on the floor? Was the victim shooting? Yeah, he allegedly had the gun, right? Yes, no. Mr. Thomas got a shot in the neck and landed on the floor, apparently. Yes. Was he face up? Yes. Okay, was he shooting that at the time he received all the lead from the defendant? The testimony at trial, Your Honor, was that he did not shoot. The victim did not shoot once he was prone on the ground. The defendant did continue to shoot because the gun that the victim had was laying very close to him, very close to his hand. It might have still been in his hand and his hand was twitching. So the defendant testified that because he perceived it to still be a threat with him laying on the ground with the gun close to his hand and his hand twitching, he continued to shoot. That was the... So he emptied the weapon? I don't remember if he emptied. I think he did. Okay. He fired multiple shots, six. No further questions. Thank you. No further questions. Okay, thank you both for your briefs and your arguments today. The court will take this matter under consideration and issue its ruling in due course.